UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STOREY CONSTRUCTION CO., INC.

               Plaintiff,                            08 Civ. 976 (GBD)

     vs.

M&I MARBLE WORKS LTD., d/b/a
MARBLE SOLUTIONS,

               Defendant.
------------------------------------------------------------X

### Defendant's Memorandum of Law In Support of Motion to Dismiss

### Preliminary Statement

This is an action by the plaintiff Storey Construction Co. Inc. ("plaintiff") against M&I Marble Works Ltd. ("defendant") for an alleged breach of contract with respect to plaintiff's purchase of certain "Jerusalem Stone" ("the stone") sold by defendant. The stone was intended (and actually purchased by) plaintiff's clients, Mr. and Mrs. Miles Stanislaw ("the Stanislaws"). The Stanislaws apparently planned to use such stone in connection with the construction of their Idaho home for which plaintiff was the "general contractor." Together with the affidavit of Israel Cohen, sworn to March __, 2008 ("Cohen Aff."), this Memorandum is submitted in support of the motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure.

### Statement of Facts

Although hardly clear from plaintiff's sparse pleading, this is a breach of contract action by plaintiff—the purported purchaser of the stone—against defendant, the seller thereof. Cohen Aff., pars. 4 and 5. Defendant contends that it dealt almost exclusively with Miles Stanislaw and his wife Jean ("the Stanislaws") who were building a second

home in Ketchum, Idaho. Cohen Aff., par. 3.[1] In any event, and as the plaintiff cannot dispute, the Stanislaws paid defendant $58,150.00 for the stone in or about October 2006—well below the $75,000 minimum necessary, under 28 U.S.C. Section 1332(a), for diversity jurisdiction, such as plaintiff is alleging exists. Cohen Aff., par. 5. At some subsequent point, the stone was delivered to the Stanislaws in Idaho where it was rejected as late and non-conforming although the stone remains, to this day, with them (unless they have since disposed of it). Cohen Aff., par. 5. Thus, even if the stone was completely worthless upon its arrival (which is hardly conceded), plaintiff could recover no more than the $58,150.00 paid (by the Stanislaws) unless plaintiff is entitled to special damages, which it is not.

## Argument

### Point I

### Plaintiff Cannot Reach the $75,000 Threshold for the Invocation of Diversity

In a "garden variety breach of contract action by a buyer against a seller, as here, "the measure of damages of a buyer for goods "repudiated"[2] is controlled by the Section 2-713 of the Uniform Commercial Code ("UCC") 2-713. . 148 of New York's Personal Property Law…" *Buyer v. Mercury Technical Cloth & Felt Corporation*, 301 N.Y. 74, 77 (1950)[3]. UCC Section 2-713 provides in pertinent part

> the measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this Article (Section 2-715), but less expenses saved in

---

[1] As noted above, apparently, the plaintiff was then acting as the "general contractor" for the Stanislaws and, in that connection, visited the defendant's showroom.
[2] For purposes of this analysis (and motion), it is assumed that the buyer—either the Stanislaws or plaintiff—rejected the stone. However, the next UCC Section 2-714 deals with damages for "accepted" goods and, as to "special" or "consequential" damages, the provisions of UCC Section 2-715 are also incorporated. Hence, whether the stone was accepted or not, it makes no difference with respect to the standard of damages with respect to "consequential" ones is the same.
[3] In *Buyer* (coincidentally the plaintiff "buyer" was the actual buyer of goods), the plaintiff had recovered against the defendant seller (for apparently "accepted" goods) following a trial and the seller appealed, contending that (among other things) the plaintiff had failed to adduce adequate evidence of price for the goods in question. The Court of Appeals agreed with the defendant-seller, reversing and ordering a new trial on this point. The Court was there dealing with Personal Property Law ("PPL") Section 148—the PPL sections pertaining to the sale of goods were eventually rescinded and the UCC was adopted in NY with no change relevant to this case.

consequence of the seller's breach.

UCC Section 2-715 defines "special"[4] damages—that is to say damages above and beyond the normal market measure of damages defined in either 2-713 or 2-714 of the UCC, to include either "incidental" (subsection 1) or "consequential (subsection 2):

1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

It is respectfully submitted that, in this case, there are no such "incidental" or "consequential" damages in this case.

Here, the plaintiff—or more accurately, the Stanislaws—paid the defendant only $58,150.00. Hence, even assuming either the goods were not delivered (which was not the case) or that the goods were totally worthless when delivered (which was also not the case), *the very most that plaintiff/Stanislaws could recover—absent "special circumstances" not present here-- would be that amount—well below the diversity minimum.*

*Page One Auto Sales, Inc. v. Annenchino, et al*, 2003 WL 21313291 (Sup. Ct Monroe Co. 2003) clearly illustrates why the Stanislaws (and/or the plaintiff) cannot recover from defendant *more than what the Stanislaws paid for the stone*. There, a used car dealership purchased from the defendant (supplier) automobiles which turned out to be stolen. Among other things, the plaintiff sought to recover from the defendant for lost

---

[4] It is also worth noting that even if either the plaintiff (or the Stanislaws) had such "special" damages, they would be required, by FRCP 9(g) to specifically plead them which they have not done. That rule provides: "If an item of special damage is claimed, it must be specifically stated". Here, plaintiff's complaint is completely silent, merely stating (at par. 3 thereof), in boilerplate fashion, that "the amount in controversy exceeds the sum or value of the [diversity minimum] of $75,000…"

profits and damages to its reputation ("consequential" damages). This it could not do because such damages would not have been reasonably foreseeable to the defendant-seller.[5]

Likewise, in *Bazzini v. Garrant*, 116 Misc.2d 119, 455 N.Y.S.2d 77 (NY Dist Ct 1982), a buyer of a bird which died two weeks after delivery sought to recover, as here, to recover more than it had paid—specifically, the cost of an autopsy. Referring to the "special" damages section (2-715), the Court limited the purchaser to the purchase price, holding that such incidental damages are not recoverable. Moreover, even if a seller knows that particular goods are to be re-sold by the buyer, such knowledge is not enough to impose upon the breaching seller responsibility for the buyer's lost profits. *Armstrong Rubber Co. v. Griffith*, 43 F.2d 689 (2d Cir. 1930). See also, *International Gateway Exchange, LLC v Western Union Financial*, 333 F.Supp.2d 131, 149 (S.D.N.Y. 2004) (lost profits/earnings not recoverable in breach of contract action); *Solutia Inc. v. FMC Corp.*, 385 F.Supp.2d 324, 342 (S.D.N.Y.2005) (*quoting Bridgestone/Firestone, Inc.*, 98 F.3d at 20 (2d Cir.1996) (in breach of contract action, damages for alleged misrepresentation are not recoverable).

The purpose of a jurisdictional minimum in diversity cases is to prevent the federal docket from being clogged unnecessarily by (financially) "insubstantial" cases. *Suarez v. Lufthansa Airlines*, 337 F.Supp. 60 (D.C. Puerto Rico, 1971). If a party's breach of contract claim reaches the jurisdictional minimum by including damages that are questionable under law, the action must be remanded. *Wallace v. Hartford Ins. Co.*, 583 F.Supp. 1108 (W.D. VA 1984) (to reach the diversity minimum, the litigant needed to include punitive damages which were not cognizable under applicable local law). Here, it is clear that the only way this otherwise financially insubstantial case can reach the jurisdictional threshold is by including "special" damages which the plaintiff cannot recover. Accordingly, the action should be dismissed for want of subject matter jurisdiction.

---

[5] However, the Court did allow the seller to recover "incidental" damages such as attorney's fees incurred in defending underlying actions by people who had purchased the stolen vehicles, and so on. Here, such "incidental" damages, if any, were not reasonably foreseeable to the defendant, not to mention that they have not been pleaded, as required as noted above.

## Point II
### Plaintiff Is Not the Real Party In Interest

In this case, defendant has demonstrated that essentially all of its dealings—at least with respect to the alleged contract defendant supposedly breached—were with the Stanislaws, not the plaintiff who the Stanislaws apparently retained as their general contractor. Rule 17(a) ("real party in interest") requires that "[e]very action shall be prosecuted in the name of the real party in interest [which, it is submitted, is/are the Stanislaws with whom the defendant entered into a contract, if indeed there is one]." True, such Rule does not require dismissal of an action improperly not prosecuted in the name of the real party in interest "…until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest…" However, where it is clear that a party is not, in fact, the real party in interest, as here, then dismissal is appropriate. *Hobbs v. Police Jury of Morehouse Parish*, 49 F.R.D. 176, 180 (W.D. La. 1970) (plaintiff, who was not, among other things, a property owner, lacked standing to challenge constitutionality of state law giving certain voting rights to property owners); . *Portland Baseball Club, Inc. v. Kuhn*, 368 F.Supp. 1004 (D.C.Or.1971), affirmed 491 F.2d 1101 (plaintiff in breach of contract suit not real party in interest and suit dismissed). Alternatively, if this action is not dismissed, the defendant is entitled to have the Stanislaws ratify, in accordance with Rule 17, the prosecution of this action so that defendant will not be faced with the prospect of successfully defending itself on the merits here only to find that the Stanislaws may later claim that they are the real parties in interest. Whatever the relationship between the plaintiff and the Stanislaws, it is clear that the Stanislaws should, in accordance with the above quoted rule, either ratify the instant action, or be joined as parties.

## Conclusion

For all the reasons stated, defendant's motion should be granted in all respects, and this action should be dismissed.

Dated: March 14, 2008

                                            Solomon and Siris, PC
By: _____
Michael J. Siris (MS 1715)
Attorneys for Defendant
50 Charles Lindbergh Blvd.
Uniondale, NY 11553
516 228 9350

To:   McDonough, Marcus,
       Tretter, Heller & Kanca, LLP
      Attorneys for Plaintiff
      145 Huguenot Street
      New Rochelle, NY 10801
      914 632 4700